MAXWELL F. McCOLLOUGH, APPELLEE, v. THE COUNTY OF DOUGLAS IN THE STATE OF NEBRASKA, APPELLANT.

34 N. W. 2d 654

Filed November 15, 1948. No. 32383.

*James J. Fitzgerald* and *Theodore L. Richling*, for appellant.

*Eugene D. O'Sullivan, Arthur J. Whalen, Ernest S. Priesman,* and *Eugene D. O'Sullivan, Jr.,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This action as instituted was a claim filed by Maxwell F. McCollough, plaintiff in the district court and

appellee here, against the County of Douglas, Nebraska, defendant in the district court and appellant here, on August 27, 1945, wherein McCollough claimed that the County of Douglas was indebted to him in the amount stated at one place in the claim to be $6,755 and in another $6,785 which he alleged was the difference between the salary of a deputy clerk of the district court for the county of Douglas which was paid to him for the period beginning January 1, 1940, and ending June 30, 1945, and the salary of chief deputy which position he asserted that he held and occupied for the period named. McCollough will be referred to hereinafter as plaintiff and the County of Douglas as defendant.

The board of commissioners of Douglas County denied the claim on August 28, 1945. Following the denial of the claim plaintiff in due form of law appealed the decision to the district court wherein issues were joined on pleadings. Following the joinder of issues a jury was waived and trial was had to the court. On the trial plaintiff recovered a judgment for $4,970 with interest in the amount of $488.15 and costs. The district court sustained the position and contention of plaintiff but gave judgment for the four-year period preceding and including June 30, 1945. The earlier period was excluded on the ground that compensation therefor was barred by the appropriate statute of limitations. This exclusion need not be discussed or further referred to since the appeal does not bring the matter into question and no cross-appeal was taken. From this judgment the defendant has appealed.

In order that the matters presented by this appeal may be properly understood it becomes necessary to make reference to certain statutes which were in force and effect at the date of the commencement of the period covered by the claim and to subsequent statutory changes which came about in part by amendment and in part by repeal during that period and which became controlling with the effective date of the changes and

to apply thereto the facts as disclosed by the record. The provisions to be considered and applied relate generally to deputy clerks of district courts and particularly to chief deputy and deputy clerks of the district court in the county of Douglas. At the commencement of the time in question and continuing to August 29, 1943, the provisions of the Compiled Statutes of 1929 were controlling. From and after August 29, 1943, the provisions of the Revised Statutes of 1943 became controlling.

Section 27-401, Comp. St. 1929, is in part as follows: "The clerk of the * * * several district courts in this state shall have power to appoint deputies; * * * and provided further, in counties having over one hundred thousand inhabitants, the clerk of the district court shall appoint one chief deputy, whose salary shall be three thousand dollars per annum."

Section 33-109, Comp. St. 1929, is in part as follows: "If the clerk of the district court thinks necessary, said clerk may with the approval of the county board be allowed one deputy at a compensation of not to exceed one-half the amount paid the clerk of the court, * * *; Provided further, that in counties having one hundred fifty thousand inhabitants the clerk of the district court shall have the following deputies and assistants for such periods and at such salaries as he may determine, with the approval of the county board, all to be paid monthly out of the general fund of the county to-wit: One chief deputy at a salary of three thousand dollars per annum; one deputy and disbursing clerk, whose salary shall not exceed twenty-five hundred dollars per annum; one bookkeeper and cashier, whose salary shall not exceed twenty-one hundred dollars per annum; five deputies or assistants whose salaries shall not exceed eighteen hundred dollars each per annum; * * *."

Section 25-2219, R. S. 1943, is as follows: "Any duty enjoined by this code upon a ministerial officer, and any act permitted to be done by him, may be performed by his lawful deputy."

This provision was in full force and effect during all of the time with which this action is concerned.

By action of the Legislature in 1943, section 27-401, Comp. St. 1929, was repealed and section 24-401, R. S. 1943, was enacted in its place, the pertinent part of which is as follows: "The clerk * * * of the several district courts in this state shall have power to appoint deputies; * * *."

This provision became effective August 29, 1943. It will be noted that in it there appears no reference to a chief deputy or a salary for such an office or position.

Section 33-109, Comp. St. 1929, was repealed by action of the Legislature in 1943. The repeal became effective August 29, 1943. No similar provision was enacted.

By action of the Legislature in 1943 section 23-1110, R. S. 1943, was enacted, which is in part as follows: "In counties having a population of class (8), the county officers shall each receive as their annual salaries, to be paid monthly out of the general fund of the county, as follows: * * * deputy clerk of the district court, who acts as chief deputy, the sum of thirty-two hundred dollars; other deputy clerks of the district court, not to exceed the sum of twenty-seven hundred dollars; * * *."

All of these provisions have reference to the county of Douglas since this county met the requirements as to population and classification specified therein.

The rights of plaintiff and the liabilities of the defendant, if any, must, up to August 29, 1943, be ascertained with reference to the statutory provisions effective up to that time and thereafter with reference to the provisions which were effective on or after that date.

The district court found that plaintiff was de facto chief deputy clerk of the district court from January 1940 to August 29, 1943, and acting chief deputy thereafter until May 29, 1945, and accordingly rendered judgment for the difference between the salary received by plaintiff as deputy clerk of the district court and the

statutory salary of chief deputy and of deputy acting as chief deputy except for that portion of the difference which it was concluded was barred by the statute of limitations.

There are nine assignments of error urged as grounds for reversal. The first seven amount to an assertion that the judgment may not be sustained for the reason that during none of the time mentioned was plaintiff de jure or de facto chief deputy or acting chief deputy within the meaning of the statutes.

The remaining two contain a contention that the claim is barred by section 23-135, R. S. 1943, since it was not filed with the county clerk within ninety days from the time when the service was performed. This latter contention will be dealt with first herein.

The contention is without merit. This court, in Hollingsworth v. Saunders County, 36 Neb. 141, 54 N. W. 79, in construing a statute requiring claims against the county to be filed with the county clerk and passed upon by the county commissioners of the county, declared that the requirement attached only to claims ex contractu. This holding was followed in Douglas County v. Taylor, 50 Neb. 535, 70 N. W. 27, and Perkins County v. Keith County, 58 Neb. 323, 78 N. W. 630.

The statutes under consideration in those cases contained no limitation as to the time within which the claim should be filed. This limitation came into our statutory law by chapter 50, section 1, page 176, Laws 1935.

This court in later decisions, without departing from the earlier rule, has adopted other criteria for ascertainment of whether or not there is a necessity for filing a claim with the county clerk for action by the board of county commissioners. This later plan is made to depend upon the question of whether or not judicial action is required.

In Mitchell v. County of Clay, 69 Neb. 779, 96 N. W. 673, it was said: "County commissioners act quasi

judicially in passing upon claims against the county, whenever their action is not merely a formal prerequisite to the issuance of a warrant, but involves the determination of questions of fact, upon evidence or the exercise of discretion in ascertaining or fixing the amount to be allowed." See, also, Red Willow County v. McClain, 123 Neb. 209, 242 N. W. 423.

In Hansen v. Cheyenne County, 139 Neb. 484, 297 N. W. 902, it is made clear that where the salary or compensation of a public officer is fixed by statute no judicial action in that respect is required of the board of county commissioners and in consequence in any such case the provisions of section 23-135, R. S. 1943, do not apply. It is also made clear that where a claim may involve both judicial and ministerial action and where the judicial feature has been decided favorably to the claimant and the ministerial feature adversely further processes for recovery need not be in conformity with this provision of the statute.

In this as in that case the amount of service, which required judicial action, was involved. In this case as in that one the rate of compensation fixed by statute, which required only ministerial action, was involved. The judicial phase was determined by allowance periodically to plaintiff of his salary as a deputy clerk. The only thing which was left for determination was the allowance or disallowance of a rate of pay fixed by statute over which the board of county commissioners had only ministerial control. The claim did not arise ex contractu and at the time it was filed it only required ministerial action.

We conclude therefore that this proposition must be determined adversely to the defendant under the authority of the cases cited and the reasoning contained in the opinions.

Returning now to the questions involved in the first seven assignments of error it may readily be said that plaintiff was never at any time prior to August

29, 1943, a de jure chief deputy clerk of the district court.

"An 'officer de jure' is one who is in all respects legally appointed and qualified to exercise the office; one who is clothed with the full legal right and title to the office; in other words, one who has been legally elected or appointed to an office, and who has qualified himself to exercise the duties thereof according to the mode prescribed by law." 46 C. J., Officers, § 13, p. 927.

The plaintiff did not and does not claim to have met the requirements of this definition which is accepted in all jurisdictions as a proper definition of an officer de jure.

Was plaintiff during the period ending August 29, 1943, de facto chief deputy clerk of the district court? If so, was he entitled to receive the salary fixed for the office by statute?

The following from 43 Am. Jur., Public Officers, § 471, p. 225, is a widely accepted definition of a de facto officer: "A person is a de facto officer where the duties of the office are exercised (1) without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; (2) under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; (3) under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; (4) under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

Plaintiff was not a de facto officer within the first

numbered division of the definition for there were no duties under the law peculiar or directly assignable to the office of chief deputy. Any and all duties of the office were subject to full and legal performance by the clerk or any other deputy as well as the chief deputy when there was one. The protection of no right of the public depended upon performance of any act by a chief deputy. A custom of the office in vogue whereby when there was a chief deputy certain functions were assigned to him cannot have the effect of altering the status of a deputy assigned to the performance of those functions without affirmative action in that respect by the appointing power or authority. It matters not at all what the mental attitude of third persons was with reference to the title held by plaintiff since legally their reliance was upon him as deputy clerk clothed with the power to perform the functions imposed by law upon the clerk of the district court.

The de facto officer doctrine does not rest upon a vindication of the right of one to occupy a position or to perform official acts but upon the principle of protection to the interests of the public and third parties. It is well stated in 43 Am. Jur., Public Officers, § 470, p. 225, as follows: "The doctrine rests on the principle of protection to the interests of the public and third parties, not to protect or vindicate the acts or rights of the particular de facto officer or the claims or rights of rival claimants to the particular office. The law validates the acts of de facto officers as to the public and third persons on the ground that, although not officers de jure, they are, in virtue of the particular circumstances, officers in fact whose acts public policy requires should be considered valid."

Agreeable to this principle there having been no act which depended upon the question of whether or not plaintiff was chief deputy there was no opportunity for the employment of the de facto doctrine, hence it could not be said that he was de facto a chief deputy.

Plaintiff cannot be said to have become a de facto officer under any one of the other three divisions of the definition since they and each of them depend upon color of election or appointment. He was never in anywise appointed chief deputy and there was no provision for election. There is a suggestion that he was appointed but the evidence fails to support the suggestion.

The record discloses that prior to the time in question there had been a chief deputy who resigned. At about the time of his resignation the clerk had a conversation with plaintiff relative to the future conduct of the office. Plaintiff testified as to that conversation as follows: "Q. Do you recall what Robert Smith said to you on the occasion when you were in his office and you were told something about Gottneid taking the Federal Court position; do you recall that conversation? A. In substance. Q. And will you state what Mr. Smith said in that regard? A. He said Gottneid was going to take this position in the Federal Court next week. Q. And did he say anything else? A. He says, 'I want you to take over and we will carry on with the proper adjustments.' Q. After that was said did you say anything? A. I don't recall that I said anything more than we would do our best."

This cannot be construed to be an appointment as chief deputy. It is evident from the record that plaintiff did not consider it as such since there was no further discussion of the matter and since he continued to receive for his services without protest for more than five years his salary as deputy clerk.

We conclude therefore that plaintiff was not chief deputy clerk of the district court for the county of Douglas at any time prior to August 29, 1943.

Assuming that plaintiff was de facto chief deputy clerk still it would be necessary to say that he could not recover the salary of the office. This court in Frasier v. Dundy County, 115 Neb. 372, 213 N. W. 371,

said: "The authorities also generally hold that the performance of the duties by a de facto incumbent gives him no claim to the official compensation."

Zevin v. School District, 144 Neb. 100, 12 N. W. 2d 634, is a case wherein, while the de facto officer doctrine was not specifically mentioned, quoting from 24 R. C. L., Schools, § 73, p. 616, this court said: "* * * the right of a public officer to the compensation of his office is incident to and dependent upon his right and title to the office." This rule is by no means universal but it is the one followed in this jurisdiction.

Reverting now to the period beginning August 29, 1943, it will be observed from analysis of the statutory provisions referred to and quoted herein that there remained no provision for the appointment of a chief deputy clerk. There remained only provision for a fixed salary for a "deputy clerk of the district court, who acts as chief deputy."

In this connection plaintiff makes alternative contentions. One is substantially that within the meaning of the statute there was provision for a chief deputy as an officer and that he was a de facto officer holding the office. The other is that there remained legally no office of chief deputy but only an assignable position and that he held an office of deputy with assignment to and action in the position of chief deputy and that therefore he was entitled to the salary fixed by statute.

While more apt and conclusive language might have been used in declaring the intent of the Legislature yet we think when the quoted portion of section 23-1110, R. S. 1943, is quoted in its relation with section 23-1101, R. S. 1943, both being related provisions of the same act, it becomes clear that the Legislature intended to designate the position of chief deputy an office and the holder of the position an officer. The first clause of section 23-1101 is as follows: "Counties shall be classified for the purpose of fixing the salaries of county officers and their deputies as follows: * * *." The

pertinent part of section 23-1110 has already been quoted. The two read together as follows, as it is clear that they must be, contain the intent of the Legislature in this respect: "Counties shall be classified for the purpose of fixing the salaries of county officers and their deputies as follows: * * * In counties having a population of class (8), the county officers shall each receive as their annual salaries, to be paid monthly out of the general fund of the county, as follows: * * * deputy clerk of the district court, who acts as chief deputy, the sum of thirty-two hundred dollars; other deputy clerks of the district court, not to exceed the sum of twenty-seven hundred dollars; * * *."

Thus read it appears that the Legislature intended to designate the position of chief deputy an office separate and distinct from that of a deputy. The salaries specified were for legislatively named offices.

If this be a correct interpretation and we conclude that it is, then the claim of plaintiff must be treated on the same basis and in the same manner after August 29, 1943, as before, since his status remained after that date the same as before. He was neither de jure nor de facto chief deputy clerk of the district court and was never designated to so be or act.

For the reasons herein stated we conclude that the plaintiff was not entitled to recover all or any part of the amount claimed.

The judgment of the district court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.