CARL PLOOG, APPELLANT, V. ROBERTS DAIRY COMPANY
ET AL., APPELLEES.

FILED FEBRUARY 11, 1932.   No. 28100.

*Lawrence I. Shaw*, for appellant.

*J. W. Weingarten, contra.*

Heard before GOSS, C. J., DEAN and PAINE, JJ., and
CARTER and RHOADES, District Judges.

PER CURIAM.

This is an action at law, brought by the appellant to
recover damages in the sum of $15,000 from the appellees,
on account of alleged violations of the Nebraska antitrust
law, as set out in sections 59-801 and 59-802, Comp. St.
1929, covering the subject of unfair local discrimination
by any person, firm or company doing business in the state
of Nebraska, and providing penalties for the violation
thereof. Demurrers were filed to the original petition, and
sustained, after which the appellant amended his petition,
and the demurrers were allowed to stand by agreement as
demurrers to the amended petition, and the demurrers be-
ing again sustained and the appellant electing to stand on
the petition as amended, the action was dismissed by the
district court.

The petition alleges, in substance, that the Roberts Dairy
Company is a corporation, buying and selling fresh milk
at Omaha; that the defendant, Floyd S. Pegler, is its man-
ager at Omaha, and Lloyd Wright is the assistant man-
ager, and that the defendants Chris Bull, Fred Glessman
and John Harder are residents of Sarpy county, engaged
in the same business, of trucking milk, as the appellant;
that the appellant, a resident of Sarpy county, for two

years had been engaged in the business of hauling fresh milk with his truck equipment, in which he had invested some $2,000; that his customers consisted of some 19 farmer producers, located in the vicinity of Chalco, and that he hauled the milk of said customers daily to the Roberts Dairy Company in Omaha, Nebraska, and there the milk was purchased by the Roberts Dairy Company from the producers, for a price agreed upon between them; that the appellant was paid for hauling such milk by the farmers at a rate agreed upon, the amount of compensation varying in the case of each producer; that the said dairy company, with the other defendants, combined and conspired to restrict and restrain the trade and competition of the appellant and to drive him out of business, and to monopolize and control the daily hauling of fresh milk from the area from which the plaintiff had been hauling the same, and notified the farmers that, beginning within a day or two immediately following, the said dairy company would refuse to purchase or to accept fresh milk from them unless the same was transported by one of the defendants, Harder, Bull, or Glessman; that the three defendants, Wright, Bull, and Harder, notified the appellant that the said dairy company would no longer purchase fresh milk from the producers if the same was hauled or transported by the plaintiff. Appellant further alleged that, because of the distance hauled and the necessity for an immediate sale of fresh milk, it was impossible to make negotiations to sell the same to other persons without serious loss and damage to the producers, and that a majority of the producers acquiesced in the demands of the defendants and permitted said defendants to haul their milk, and therefore the plaintiff's business was absolutely destroyed; that appellant's average profits had been $160 a month, which were wholly cut off, and the value of his trucks greatly depreciated, all to his actual damage in the sum of $5,000, and appellant therefore prayed, as provided by law, that he be allowed to recover three-fold damages, in the sum of $15,000, and reasonable attorney's fees.

The appellees insist that contracts for the performance of service, without any definite or specific period of duration, are generally terminable at the will of either party (*Smith v. Bailey*, 105 Neb. 754) and that such antitrust laws should be reasonably interpreted and applied.

Appellees state that, as set out by Judge Sanborn in *Whitwell v. Continental Tobacco Co.*, 125 Fed. 454, such statutes cannot be taken too literally or it would defeat all competition, and insist that appellant has, during the period of two years, monopolized the business of hauling fresh milk from these customers by an arrangement and agreement or combination between himself and the farmer producers and the said dairy company, and admits that the said dairy company can only displace him by making another agreement between the producers and themselves with another milk hauler, and that the present arrangement is no different from the arrangement made with the appellant, and that obviously the appellant would not be entitled to employment as long as he lived, but that the producers and the dairy company would have a right to terminate at will the arrangement with him and make the same arrangement with another hauler.

It was held in *State v. Employers of Labor*, 102 Neb. 768, in the text of the opinion: "If there is no contract for any fixed term of employment, the employer may discharge, or the employee stop work, at his own pleasure."

In *Smith v. Bailey*, 105 Neb. 754, we find a rule stated by this court: "That contracts for the performance of services or for the continuous furnishing of commodities are, when the contract itself specifies no period of duration, terminable, upon reasonable notice, at the will of either party to the contract."

Judge Lacombe, of the circuit court of appeals, wrote the opinion in the case of *Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co.*, 227 Fed. 46, in which case it was stated that the Cream of Wheat Company purchased in the open market a by-product in the manufacture of flour, and known as "purified middlings," which it put up in

packages and labeled "Cream of Wheat." This was its copyrighted trade-name, and by extensive advertising there was a large demand for the product. It sold this product only to wholesalers, with the one exception of selling to the Great Atlantic & Pacific Tea Company, plaintiff, which company had a large number of retail stores. When the Cream of Wheat Company decided to discontinue selling to the plaintiff, the court said: "There was no contract between the two which bound defendant to sell to complainant for any specified period of time. This suit is really brought to force defendant to continue to sell to this single retailer, as it sells to the wholesalers who trade with it." Because of the fact that the purchases of the Cream of Wheat Company of purified middlings only amounted to 1 per cent. of the total purchases of that commodity, the plaintiff did not prevail. Judge Lacombe further said: "We had supposed that it was elementary law that a trader could buy from whom he pleased and sell to whom he pleased, and that his selection of seller and buyer was wholly his own concern." And Judge Lacombe then quotes from Cooley on Torts, 278, this statement: "It is a part of a man's civil rights that he be at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice."

In the case on trial, we believe that the defendants acted within their legal rights, and while the notice given the plaintiff that they would discontinue business relations with him was exceedingly short, yet in the nature of the business it would be difficult to give a longer notice.

The aim of our antitrust laws is to preserve inviolate the principle of free, fair and open competition. At the same time, these laws seek to protect the consumer, so that he may purchase his commodity at competitive prices in a free and open market, and the courts seem to have taken the position that no person, firm or corporation may obstruct, impede or retard any one from carrying on a lawful business except by fair competition or persuasion, or by a peaceful severance of business relations.

We have examined the cases of *Cleland v. Anderson*, 66 Neb. 252, *Marsh-Burke Co. v. Yost*, 98 Neb. 523, and *State v. Interstate Power Co.*, 118 Neb. 756, and we find that the facts alleged in this case do not bring it within the holdings of those opinions. No error is found in the record of the district court in sustaining the demurrers to the amended petition, and its judgment is hereby

AFFIRMED.